**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1) DARLENE GROTH, | JURY TRIAL DEMANDED |
| Plaintiff, | |
| v. | Case No. 17-cv-00099-GKF-FHM |
| 1) STATE FARM FIRE AND CASUALTY COMPANY, | |
| Defendant. | |

## COMPLAINT

COMES NOW Plaintiff Darlene Groth ("Plaintiff"), and states the following in support of her claims as to Defendant State Farm Fire and Casualty Company ("Defendant State Farm").

1. Plaintiff is a citizen and resident of the State of Oklahoma, residing in Tulsa County, Oklahoma.

2. Defendant State Farm is incorporated and has its principal place of business in the State of Illinois.

3. This is a complaint for breach of contract and bad faith claims handling relating to the rights and liabilities of the parties under a Homeowners Policy, No. 36-BP-X368-3 issued by Plaintiff State Farm to Defendant Groth (the "Homeowners Policy").

4. Subject to its terms, conditions, and limitations, the Homeowners Policy provides coverage for personal property up to $191,250.00.

5. The amount in controversy exceeds $75,000.00 and the parties are diverse in citizenship; therefore, this Court has Subject Matter Jurisdiction over the claims in dispute.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

**FACTS RELEVANT TO CLAIMS FOR RELIEF**

7. Plaintiff purchased a policy of homeowner's insurance from Defendant State Farm, covering the time period of 12:01 a.m. on August 16, 2015 through 12:01 a.m. on August 16, 2016 (the "Policy"). The Policy applied to Plaintiff's personal residence at 2527 W 68th Pl, Tulsa, Oklahoma 74132 (the "Property").

8. On February 25, 2016, the dwelling on the Property was significantly damaged in a serious fire.

9. The fire also caused significant damage to the garage, game room, and attic of Plaintiff's home. Heat, smoke, and soot from the fire also caused damage to the dwelling.

10. The fire, heat, smoke, and soot also damaged a substantial portion of Plaintiff's personal property.

11. Following the fire, Plaintiff made a claim on the Policy for the damage to her home under Coverage A – Dwelling, Coverage B – Personal Property, and Coverage C - Loss of Use.

12. Defendant State Farm assigned claims adjuster Jerome Abbage ("Adjuster Abbage") to handle Plaintiff's claim for benefits under Coverage A - Dwelling, Coverage B – Personal Property, and Coverage C – Loss of Use.

13. Shortly after the fire, Defendant State Farm advanced Plaintiff $2,000.00 for her claim for damage to personal property under Coverage B – Personal Property. This payment reduced the available remaining limits of liability from $191,250.00 to $189,250.00.

14. After the fire, Plaintiff hired Disaster Restoration Services ("DRS"), a disaster and restoration company) to remove personal property damaged in the fire from the home, and attempt to clean the damaged property, and then store the personal property until she could move back into her home. DRS provided the services and charged approximately $30,016.29 for such services.

15. Due to the severity of the fire and extent of the smoke damage, many items of Plaintiff's personal property that were damaged in the fire were not able to be satisfactorily cleaned. Even after cleaning, the items still smelled of smoke.

16. Plaintiff received assistance from employees of DRS in preparing an inventory of personal property damaged in the fire.

17. Plaintiff also hired DRS to repair the damage to the Property caused by the fire.

18. Pursuant to Paragraph 2c of Section I – Conditions of the Policy, following a loss it is an insured's duty to:

> [P]repare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

19. On September 26, 2016, DRS (on behalf of Plaintiff) submitted a spreadsheet to Defendant State Farm (the "September 26th Inventory") which identified a line-item list of Plaintiff's personal property damaged in the fire.

20. The September 26th Inventory listed the items damaged in the fire, and for each item identified the age of the item, a description of the item, the quantity, and the cost, as required under Paragraph 2c of Section I - Conditions of the Policy.

21. While Defendant State Farm never provided Plaintiff with a formal "Proof of Loss Form" to complete and return, this September 26th Inventory was the functional equivalent of a Proof of Loss as contemplated under Oklahoma law.

22. Pursuant to 36 O.S. 3629, "It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss."

23. As set forth more fully below, Defendant State Farm did not provide Plaintiff with a written offer of settlement or rejection of her claim within 90 days of its receipt of the September 26th Inventory.

24. On or about October 14, 2016, Adjuster Abbage spoke with Plaintiff's son, John Groth, regarding Defendant State Farm's review of the September 26th Inventory. In that conversation, Adjuster Abbage identified three issues with the September 26th Inventory: 1) State Farm requested more information regarding the age of the items listed; 2) Certain items listed on the inventory were cleaned by DRS; therefore, Defendant State Farm would not pay for those items; and 3) The list included auto parts, which were not covered under the Policy.

25. In the meantime; however, Defendant State Farm did not make any payments to Plaintiff for the numerous items on the September 26th Inventory for which it had not requested additional information.

26. Having received no additional payments from Defendant State Farm for her claim for benefits under Coverage B – Personal Property, Plaintiff emailed Adjuster Abagge on December 1, 2016 and inquired about the status of Defendant State Farm's review of her personal property claim.

27. In that email, Plaintiff asked Defendant State Farm why it had not made a payment for any of the items of personal property identified on the September 26th Inventory:

> What are you waiting for to make a payment on the personal property claim? You were provided with the list of property several months ago, but I still haven't received a payment, and the fire was in February! If you are disputing some of the items, then let me know what you are disputing. But please pay what is owed. … **Please respond by email.** [emphasis added].

28. Adjuster Abbage did not respond to Plaintiff's concerns by email; instead he called her again and left a voicemail. Based upon Plaintiff's prior conversations with Adjuster Abbage,

4

she found it unhelpful to discuss the matter with him over the phone, and she wanted to identify – in writing – the additional information requested by Defendant State Farm. Therefore, Plaintiff emailed Adjuster Abbage again, and asked him to email her a response.

29. Adjuster Abbage refused to answer Plaintiff's questions in writing, instead emailing her back, stating:

> There are too many items surrounding the claim that we need to discuss for me to type them all out via email plus I want to make sure you fully understand how everything works related to your policy and the coverages so please contact me to discuss or let me know a good time to contact you. Since you are back involved with everything it seems I want to discuss it all with you.

30. On December 12, 2016, Plaintiff emailed Adjuster Abbage again, requesting that he address her request from her email of December 1, 2016 that Defendant State Farm: "Please pay what is owed".

31. Adjuster Abbage responded on December 13, 2016, saying:

> I advised you already what I needed on your personal property list so please refer back to my prior email on that. I can't process that list until it is accurate with all the corrected items and also all of the ages are updated.

32. Despite Adjuster Abbage's response, he had still not answered Plaintiff's request set forth in her December 1, 2016 email: "Please pay what is owed." Therefore, Plaintiff responded with the following:

> With regard to the personal property list are you saying that you will not start processing that until you have the entire, accurate and final list?! So you will not treat it as a work in progress?? It's all or nothing?

33. Adjuster Abbage then responded:

> Regarding your personal contents there is no need for us to start processing a list that is not accurate as we can't make a payment to you until it is made accurate so as soon as we get the accurate and corrected list we can start processing it for payment.

34. Despite Plaintiff's repeated requests that Defendant State Farm pay her the undisputed amount of her claim for damaged Personal Property, Defendant State Farm refused to do so.

35. On December 14, 2016, Defendant State Farm paid DRS's invoice for pack out and cleaning services in the amount of $29,262.32. Pursuant to the Policy, this payment reduced the available limits of liability for personal property coverage from $189,250.00 to $159,987.68.

36. Having still not received any confirmation from Defendant State Farm that it would process payments for personal property identified on the September 26th Inventory, Plaintiff hired legal counsel to communicate with State Farm.

37. On December 22, 2016, Plaintiff's legal counsel spoke with Adjuster Abbage regarding the September 26th Inventory.

38. In that call, Adjuster Abbage identified three concerns regarding the September 26th Inventory: 1) The inventory identified various auto parts, which are not covered under the Policy; 2) State Farm required more specific information regarding the age of the items identified as "new" and "antique"; and 3) Certain items identified on the September 26th Inventory also appeared on the list of items cleaned by DRS; therefore, Defendant State Farm insisted those items be removed from the September 26th Inventory.

39. The following day, December 23, 2016, Plaintiff's legal counsel emailed Mr. Abbage an updated inventory of personal property, with the more specific information regarding the age of items requested by Adjuster Abbage.

40. That same day, Adjuster Abbage responded via email, advising:

> I have also sent the current inventory list over to our Contents Department to process all of the items that is accurate on the list that we can pay for at this time or is simply not covered under this policy such as the vehicle engine and engine parts. There is also some structure items listed such as

6

>the awning and Kitchen light/fan combo that was paid under the structure portion of the claim. Once this inventory has been updated and sent back to me I will contact you to advise once the payment is ready to be processed.

41. In a separate email of that same day (December 23, 2016), Adjuster Abbage added: "All of the inventory items will be marked accordingly on our inventory breakdown for each item that we will send with the settlement payment."

42. For reasons that are unknown, Adjuster Abbage sent the September 26th Inventory to the Contents Department for processing, and not the updated inventory provided by Plaintiff's counsel to Adjuster Abbage via email on December 23, 2016.

43. On February 1, 2017, Plaintiff's legal counsel emailed Adjuster Abbage and requested an update regarding Defendant State Farm's review of the inventory. Adjuster Abbage responded later that day:

>The inventory was just completed and sent back to me today so I will get it reviewed and will need to get authority to get the payment and inventory breakdown sent to her. It appears her contents policy limit will be exceeded also. I am estimating getting this reviewed and having authority back for settlement by the first of next week. I will call you once this has been received. Thanks.

44. In other words, Defendant State Farm's Contents Department had finished processing Plaintiff's September 26th Inventory, and Adjuster Abbage was requesting authority to make a payment of $159,987.68 (the remaining limits for Plaintiff's personal property coverage).

45. The following week, Adjuster Abbage contacted Plaintiff's legal counsel on February 7, 2017, and advised that contrary to Adjuster Abbage's email of February 1, 2017, Defendant State Farm still required additional information to process Plaintiff's Personal Property claim.

46. In fact, Adjuster Abbage advised that Defendant State Farm refused to make *any* payments until Plaintiff provided additional information, which Adjuster Abbage identified in

7

subsequent letter of February 9, 2017 which listed 13-bullet points of necessary documents and information.

47. The February 9, 2017 letter from Adjuster Abbage to Plaintiff's legal counsel demanded that Plaintiff produce additional information prior to Defendant State Farm considering the list for payment. Several of these issues had never been raised before.

48. Plaintiff has complied with the applicable terms of the Policy, but Defendant State Farm has refused to pay Plaintiff benefits owed under Coverage B – Personal Property.

### First Claim for Relief: Breach of Contract

49. Plaintiff adopts the above paragraphs and incorporates them by reference.

50. Plaintiff and Defendant State Farm are parties to a contract for homeowners insurance, which includes insurance for Personal Property – Coverage B.

51. Defendant State Farm has breached the Contract by refusing to pay Plaintiff benefits owed under Coverage B - Personal Property.

52. Plaintiff has complied with the requirements of the Policy by providing State Farm with an inventory identifying a description of each item of property, along with its age, cost, and quantity.

53. Defendant State Farm has breached the Contract by refusing to pay Plaintiff for benefits under Coverage C - Loss of Use owed for additional living expenses incurred as a result of the fire.

54. As a result of Defendant State Farm's breach of contract, Plaintiff has sustained actual damages in excess of $75,000.00.

55. Pursuant to OKLA. STAT. TIT. 36 § 3629, Plaintiff is entitled to an award of reasonable attorney fees and interest.

**WHEREFORE** Plaintiff Darlene Groth requests judgment on her claim for breach of contract against Defendant State Farm, and requests actual damages in excess of $75,000.00, as well as attorney fees recoverable under Oklahoma law.

**Second Claim for Relief: Bad Faith Handling of Insurance Claim - Failure to Pay for Covered Damages Not in Dispute (Failure to pay "Undisputed Amount")**

56. Plaintiff incorporates the above paragraphs by reference.

57. Defendant State Farm was required under the Policy to pay Plaintiff benefits for damaged personal property pursuant to Coverage B – Personal Property.

58. Pursuant to the Policy, Plaintiff provided Defendant State Farm with an inventory of her damaged property which identified the following information for each item: description, age, quantity and cost.

59. Defendant State Farm received the inventory and advised Plaintiff of three issues with the items listed on the inventory: 1) Auto parts are not covered under the Policy; 2) State Farm required more specific information regarding the age of the items identified as "new" and "antique"; and 3) Approximately 65 items identified on the September 26th Inventory also appeared on the list of items cleaned by DRS; therefore, Defendant State Farm insisted those items be removed from the September 26th Inventory.

60. Thereafter, Plaintiff requested that Defendant State Farm pay benefits for the items on the September 26th Inventory for which it did not require additional information or did not dispute, but Defendant State Farm refused to do so.

61. Defendant State Farm's refusal to pay Plaintiff benefits pursuant to Coverage B – Personal Property was unreasonable under the circumstances, because Defendant State Farm had a legal duty to pay Plaintiff the benefits that it owed her and that it did not dispute or for which it did not require additional information.

62. Defendant's insistence upon Plaintiff's production of an updated contents list or inventory before processing Plaintiff's claim and before paying Plaintiff benefits owed under Coverage B was unreasonable because it denied Plaintiff benefits owed under the Policy.

63. The above actions by Defendant State Farm were a breach of the duty of good faith and fair dealing that it owed to its insured, Plaintiff.

64. Defendant State Farm's breach of its duty of good faith and fair dealing was the direct cause of injury to Plaintiff, including financial damages incurred by Plaintiff in purchasing replacement personal property, and emotional pain and suffering.

**WHEREFORE** Plaintiff Darlene Groth requests judgment on her claim for bad faith handling of an insurance claim against Defendant State Farm, and requests actual damages in excess of $75,000.00, and punitive damages.

### Third Claim for Relief: Bad Faith Handling of Insurance Claim – Failure to Cooperate and Deal Fairly

65. Plaintiff incorporates the above paragraphs by reference.

66. After receiving Plaintiff's September 26th Inventory, Defendant State Farm did not promptly advise Plaintiff of the additional information it required in order to evaluate her claim.

67. In fact, on December 1, 2016, Plaintiff emailed Defendant State Farm Adjuster Abbage and asked him to identify the additional information he required in order to evaluate her claim in writing, but Adjuster Abbage refused to do so.

68. Defendant State Farm did not advise Plaintiff of all of the additional information it required in order to evaluate her claim under Coverage B – Personal Property until February 9, 2017 (after Plaintiff had retained legal counsel, and more than 136 days after Defendant State Farm received the September 26th Inventory).

69. Defendant State Farm also expressed contradictory positions, underscoring its failure to cooperate and deal fairly with Plaintiff.

70. By way of example, on February 1, 2017 Adjuster Abbage emailed Plaintiff's counsel and advised that Defendant State Farm had completed its review of Plaintiff's inventory and that her contents limits would be exceeded, and he would be requesting payment. The next week; however, Adjuster Abbage completely reversed course, and advised that Defendant State Farm would not pay any benefits under Coverage B until Plaintiff produced additional information outlined in a subsequent thirteen-point letter dated February 9, 2017.

71. Adjuster Abbage's 180-degree change in position on this issue is illustrative of Defendant State Farm's delay in identifying the information it needed to evaluate the Claim - even Defendant State Farm's own adjuster was not sure what information it required in order to evaluate and process claims.

72. Adjuster Abbage's letter of February 9, 2017 requested that Plaintiff produce an unreasonable amount of information relevant to the items identified on the September 26th Inventory.

73. In a letter of December 23, 2016, Adjuster Abbage advised: "All of the inventory items will be marked accordingly on our inventory breakdown for each item that we will send with the settlement payment." This was never done. Defendant State Farm never provide an inventory breakdown.

74. The above actions by Defendant State Farm were a breach of the duty of good faith and fair dealing that it owed to its insured, Plaintiff.

75.     Defendant State Farm's breach of its duty of good faith and fair dealing was the direct cause of injury to Plaintiff, including financial damages incurred by Plaintiff in purchasing replacement personal property, and emotional pain and suffering.

**WHEREFORE** Plaintiff Darlene Groth requests judgment on her claim for bad faith handling of an insurance claim against Defendant State Farm, and requests actual damages in excess of $75,000.00, and punitive damages.

Respectfully submitted,

S**CHAFFER** H**ERRING** PLLC

*s/Ryan Fulda*
Ryan J. Fulda, OBA #21184
7134 South Yale, Ste. 300
Tulsa, Oklahoma 74136
Telephone: (918) 550-8120
Facsimile: (918) 550-8106
ryan.fulda@schafferherring.com
**ATTORNEYS FOR PLAINTIFF**